IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 18-cv-00478-CMA-STV (consolidated for all purposes with Civil Action No. 18-cv-00564-CMA-KLM)

PENNSYLVANIA LUMBERMENS MUTUAL INSURANCE COMPANY, and
SENECA INSURANCE COMPANY, INC.,

    Plaintiffs,

v.

RSTART, LLC, *d/b/a* Planet Roofing & Solar,

    Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS PENNSYLVANIA LUMBERMENS MUTUAL
INSURANCE COMPANY'S COMPLAINT; AND DENYING DEFENDANT'S MOTION
TO DISMISS SENECA'S COMPLAINT**

---

The matters before the Court are Defendant RStart LLC d/b/a Planet Roofing & Solar's ("Planet Roofing"):

1. Motion to Dismiss Plaintiff Pennsylvania Lumbermens Mutual Insurance Company's ("PLM") Complaint (18-cv-00478, Doc. # 11); and

2. Motion to Dismiss Plaintiff Seneca Insurance Company, Inc.'s ("Seneca") Complaint. (18-cv-00564; Doc. # 16.)

For the following reasons, the Court grants in part and denies in part Planet Roofing's Motion to Dismiss PLM's Complaint and denies Planet Roofing's Motion to Dismiss Seneca's Complaint.

## I. BACKGROUND

The following facts are taken from PLM's and Seneca's Complaints, which are accepted as true for purposes of the underlying motions. *See Williams v. Meese,* 926 F.2d 994, 997 (10th Cir. 1991).

This consolidated action[1] arises out of the collapse of two roofs at the Maplewood Village Apartments, LLC apartment complex ("Maplewood Village"). (Doc. # 1 at ¶ 10.) Maplewood Village entered into a general contract with Planet Roofing for re-roofing services. (18-cv-00564; Doc. # 1 at ¶ 8.) Planet Roofing, in turn, purchased roofing and construction materials from Gulfeagle.[2] (Doc. # 1 at ¶ 6.) As part of the purchase, Planet Roofing and Gulfeagle also entered into a contract, wherein, as pertinent here, Planet Roofing agreed to indemnify Gulfeagle for "any and all loss or expense . . . by reason of liability imposed upon [Gulfeagle] for damages . . . whether caused or contributed by [Gulfeagle] . . . arising from the delivery and placement of materials being delivered." (Doc. # 1-1 at 2.)

On June 16, 2017, Gulfeagle delivered the roofing materials to Maplewood Village and stacked them on the roof at Planet Roofing's direction. (*Id*. at ¶ 9.) Three days later, the roofs collapsed. (*Id*. at ¶ 10.) Maplewood Village then submitted an insurance claim for the damaged roofs to its insurer, Seneca. (18-cv-00564; Doc. # 1 at ¶ 12.) Seneca made, and is continuing to make, payments to Maplewood Village for

---

[1] On June 19, 2018, this Court consolidated, for all purposes, Civil Action Nos. 18-cv-00478 and 18-cv-00564. Case No. 18-cv-00478 is the lead case, and all docket citations, unless they state otherwise, refer to the docket therein.
[2] Gulfside Supply, Inc. does business as Gulfeagle Supply. The Court, therefore, refers to both entities as "Gulfeagle."

repair of the roofs. (*Id.*) To date, Seneca has paid $882,128.90 to or on behalf of Maplewood Village for repairs. (*Id.*) Seneca was therefore "subrogated" to seek payment from Gulfeagle and Planet Roofing for damage caused to the roofs. Gulfeagle, through its insurer PLM, settled Seneca's subrogation claim. PLM agreed to pay Seneca $508,000 on Gulfeagle's behalf, and in exchange, Seneca signed a "Release," wherein it relinquished its right to sue PLM, Gulfeagle, and all related subsidiaries for any damages relating to the collapsed roofs. (Doc. # 11-1.)

Planet Roofing was not a party to the Settlement. Planet Roofing was, however, notified of the damage to Maplewood Village as well as Seneca's subrogation claim. Planet Roofing denied any responsibility for the collapsed roofs and refused to pay Seneca any funds related to the damages. (Doc. # 1 at ¶ 10.) Planet Roofing has also refused to indemnify Gulfeagle for the settlement amounts it paid to Seneca for damages to the roofs. (*Id*.)

In February 2018, PLM commenced the instant lawsuit against Planet Roofing, alleging breach of contractual indemnity and contribution—ultimately seeking to recover the funds it paid to Seneca on behalf of Gulfeagle. (Doc. # 1.)

In March 2018, Seneca likewise commenced a lawsuit against Planet Roofing, alleging causes of action for negligence, breach of implied warranty, and breach of contract—all related to Planet Roofing's alleged failure to exercise reasonable care and skill when in performance of its roofing services. (18-cv-00564, Doc. # 1.)

Planet Roofing now moves to dismiss both complaints. With respect to PLM's complaint, Planet Roofing argues that the indemnification clause at issue is void under

Colorado law and, therefore, Planet Roofing did not breach the contract by refusing to adhere to it. (Doc. # 11.) With respect to both complaints, Planet Roofing asks this Court to determine the scope and applicability of the Release in the Settlement between PLM and Gulfeagle—specifically to determine whether it bars PLM's contribution claim against Planet Roofing or Seneca's causes of action against Planet Roofing. (Doc. # 11; 18-cv-00564, Doc. # 16.) The Court addresses each contention below.

## II. LAW

The purpose of a motion to dismiss under Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994). A complaint will survive such a motion only if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009).

In reviewing a Rule 12(b)(6) motion, a court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. *Williams v. Meese,* 926 F.2d 994, 997 (10th Cir. 1991). Nevertheless, a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 557). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's

complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir. 1991).

When interpreting a contract on a Rule 12(b)(6) motion, the Court adheres to general principles of contract interpretation, reading the plain language of a contract to ascertain the parties' intent and the contract's meaning. *See Albright v. McDermond*, 14 P.3d 318, 322 (Colo. 2000). Contract terms will be deemed ambiguous when they can be read to have more than one reasonable interpretation. *Hecla Min. Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1090 (Colo. 1991); *see also Harwood v. Senate Majority Fund, LLC*, 141 P.3d 962, 964 (Colo. App. 2006) ("Any interpretation that creates an unreasonable or absurd result should be avoided."). The mere fact that the parties disagree about the meaning of a provision does not in itself render it ambiguous. *Snipes v. Am. Fam. Mut. Ins. Co.*, 134 P.3d 556, 558 (Colo. App. 2006).

### III. ANALYSIS

#### A. BREACH OF CONTRACT – INDEMNIFICATION CLAUSE

Planet Roofing moves to dismiss PLM's breach of contractual indemnity claim pursuant to Colo. Rev. Stat. § 13-21-111.5(6)(b), which prohibits indemnification provisions that require an indemnitor to indemnify an indemnitee for the indemnitee's own negligence. Planet Roofing contends that PLM, on behalf of its insured Gulfeagle, is requesting indemnification for Gulfeagle's negligence, which is squarely prohibited by the statute. The Court disagrees that PLM's breach of contractual indemnity claim violates § 13-21-111.5(6)(b).

Section 13-21-111.5(6)(b) provides:

5

> [A]ny provision in a construction agreement that requires a person to indemnify. . . against liability for damage arising out of . . . damage to property caused by the negligence or fault of the indemnitee . . . is void as against public policy and unenforceable.

In enacting this statute, the legislature found that "construction businesses in recent years have begun to use contract provisions to shift the financial responsibility for their negligence to others, thereby circumventing the intent of tort law." § 13-21-111.5(6)(a)(III). Thus, 13-21-111.5(6)(b) reflects "the intent of the general assembly that the duty of a business to be responsible for its own negligence be nondelegable." § 13-21-111.5(6)(a)(IV).

The indemnification clause at issue in this case provides in pertinent part:

> [Planet Roofing] hereby agrees to indemnify and save harmless [Gulfeagle], their agents, servants and the employees from any and all loss or expense (including the cost and attorney's fees) by reason of liability imposed upon [Gulfeagle] for damages . . . whether caused or contributed by [Gulfeagle], its agents, servants, employees or others arising from the delivery and placement of materials being delivered . . . .

(Doc. # 11 at 6.)

At first blush, this broad provision appears problematic in that, by requiring indemnification for "any and all loss or expense by reason of liability imposed on Gulfeagle," it could arguably require Planet Roofing to indemnify Gulfeagle for its own negligence. So requiring would contravene the intent of the legislature to prevent such "shifting" of financial responsibility for negligent conduct. *See* § 13-21-111.5(6)(a). However, courts have nonetheless upheld broad indemnification provisions, like this one, under § 13-21-111.5(6), provided that the provision is not being invoked to indeed

6

shift that responsibility, i.e. to indemnify an indemnitee for its own negligence. *See, e.g.*, *Sterling Const. Mgmt., LLC v. Steadfast Ins. Co.*, No. 09-CV-02224-MSK-MJW, 2011 WL 3903074, at *9 (D. Colo. Sept. 6, 2011) ("There seems to be no public purpose advanced by voiding indemnification agreements that, although pregnant with a latent possibility of legislatively-disapproved mischief, are not used to indemnify a culpable tortfeasor."); *see also Kennecott Copper Corp. v. Gen. Motors Corp., Terex Div.*, 730 F.2d 1380, 1382 (10th Cir. 1984) (general words alone do not necessarily import an intent to hold an indemnitor liable for damages resulting from the negligence of the indemnitee).

Therefore, the question presented is not simply whether Gulfeagle's agreement with Planet Roofing could be read to include indemnification for losses caused in whole or in part by Gulfeagle's own negligence, but rather, under the circumstances of this case, PLM (on behalf of its insured Gulfeagle) is indeed requesting that Planet Roofing so indemnify.

At this stage in the proceedings, it appears, taking the complaint as true, that PLM is not so requesting.[3] Instead, PLM seeks indemnification for losses alleged wholly attributable to Planet Roofing's negligence—a situation the legislature has not addressed. Indeed, PLM's well-pled allegations, which this Court must take as true,

---

[3] The Court need not resolve the issue of negligence at this stage in the proceedings, and the Court acknowledges that negligence is heavily disputed by the parties. Because this Court's adjudication of a Rule 12(b)(6) motion requires it to accept the well-pleaded allegations as true, this Court must accept, without yet concluding, that PLM seeks indemnification based solely on Planet Roofing's negligence, attributing no negligence to Gulfeagle whatsoever.

attributes no negligence to Gulfeagle; PLM instead alleges that Planet Roofing was negligent—in directing Gulfeagle to stack the materials on the roof. PLM contends:

> Planet Roofing caused or contributed to causing the collapse of the roofs at Maplewood Village by:
>
> (a) failing to properly supervise the delivery and placement of the roofing shingles and decking materials;
>
> (b) failing to properly evaluate the roofs for delivery and placement of the roofing shingles and decking materials;
>
> (c) failing to act properly after delivery of the roofing shingles and checking materials to prevent the collapse of the roofs; and/or
>
> (d) being otherwise negligent in the handling of materials during the performance of its re-roofing work.

(Doc. # 1 at ¶¶ 9, 15.)

Because it appears, at this preliminary posture, PLM seeks indemnification not for the indemnitee Gulfeagle's own negligence, but for the indemnitor Planet Roofing's negligence, PLM's indemnification claim is not prohibited by § 13–21–111.5(6)(b). *See Sterling Const. Mgmt.,* 2011 WL 3903074, at *9 (noting that an indemnification "provision, which obligates [the indemnitor] to indemnify [the indemnitee] for losses resulting from negligent acts of [the indemnitor] is not objectionable under C.R.S. § 13–21–111.5(6)(b).").

As other courts in this district have done, this Court will not, at this stage in the proceedings, "read § 13-21-111.5(6)(b) to void an indemnification clause as against public policy without a showing that it [i]s being invoked in the very circumstances that the legislature sought to prevent." *Sterling Const. Mgmt.,* 2011 WL 3903074, at *9 n.6.

Planet Roofing has not made that showing, and PLM's complaint demonstrates otherwise. Accordingly, the Court denies Planet Roofing's request for dismissal of PLM's claim for breach of contractual indemnity.

### B. THE SCOPE OF THE RELEASE

Planet Roofing next requests that the Court determine the scope of the Release in the Settlement between Seneca, PLM, and Gulfeagle. In conjunction with that request, Planet Roofing proffers alternate arguments: either (1) the Release protects Planet Roofing from any lawsuit by Seneca connected with the collapsed roofs or (2) the Release does not, thereby allowing Seneca's lawsuit to proceed but precluding PLM's contribution claim pursuant to Colo. Rev. Stat. § 13-50.5-102(4). The Court agrees with the latter argument but not the former.

The Release in this case states:

> IN CONSIDERATION of payment of . . . $508,000.00 . . . paid by [PLM] on behalf of Gulfeagle . . . and all related subsidiaries, (hereinafter called Payers), Seneca . . . does hereby release and forever discharge said Payers from any and all consequences of the accident hereinafter described as a roof collapse at . . . Maplewood Apartments.
>
> . . .
>
> IT IS FURTHER UNDERSTOOD AND AGREED, that this release is intended to cover all action, causes of action, claims and demands for, upon, or by reason of any damage, loss or injury, known or unknown, which may be traced either directly or indirectly to the aforesaid accident, as now appearing or as may appear at any time in the future, no matter how remotely they may be related to the aforesaid accident. And this Release is executed with the full knowledge and understanding on my or our part that there may be more serious consequences, damages, or injuries or separate or distinct consequences, damages or injuries as a

9

> result of the accident aforementioned, which are not known, and that more serious and permanent injuries or separate and distinct injuries, even to the extent of death, may result from the injuries sustained in the accident aforementioned.

(Doc. # 11-1.)

The Court finds that the plain language of this Release is clear and unambiguous. It unambiguously operates to specifically release the Payers (PLM, Gulfeagle, and all related subsidiaries) from a future lawsuit by Seneca relating to the collapsed roofs. The Release does not extend to Planet Roofing—a nonparty to the Settlement who is neither mentioned nor implicated therein.[4] That the second paragraph copied above is written broadly does not mean that it could apply to all potential non-settling tortfeasors; it merely details the broad scope of release applicable to the Payers, whom are clearly delineated in the first paragraph. Not only is Planet Roofing not referenced therein, or anywhere else in the Release, it also appears that Planet Roofing expressly refused to participate in the Settlement Agreement, further supporting this Court's conclusion that Planet Roofing is not, and did not intend to be, bound thereby. (Doc. # 1 at ¶ 10.)

The Court accordingly denies Planet Roofing's request to dismiss Seneca's complaint on grounds that Planet Roofing is protected by the Release.

However, Planet Roofing's second argument with respect to PLM's contribution claim has merit. "Contribution is the right of recovery by one joint tortfeasor from the co-

---

[4] Although not cited by the parties, the Court is aware of at least one situation where settling parties can release non-settling parties from liability but finds it inapplicable here. *See Miller v. Jarrell*, 684 P.2d 954, 955 (Colo. App. 1984) (distinguishable from this case because the release extinguished "all persons liable in tort" specifically by name).

10

tortfeasor, [and] has nothing to do with the rights of the injured party to recover from the tortfeasors." *Greenemeier by Redington v. Spencer*, 694 P.2d 850, 852 (Colo. App. 1984), aff'd, 719 P.2d 710 (Colo. 1986). However, contribution between tortfeasors is not permitted in all circumstances.

As pertinent here, § 13-50.5-102(4) provides:

> (4) A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement. . . .

Cases interpreting this provision agree that it operates to preclude a contribution claim by a settling tortfeasor against a non-settling tortfeasor unless the non-settling tortfeasor's liability has been addressed and completely released by the settlement. *E.g.*, *Sipf v. Herbers*, No. 1:12-CV-00441-RM-KMT, 2015 WL 2441395, at *10 (D. Colo. May 20, 2015); *Miller v. Jarrell*, 684 P.2d 954, 956 (Colo. App. 1984).

The purpose of this statute, and the identical provision of the Uniform Contribution Among Tortfeasors Act ("UCATA"), §1(d), is to encourage the equitable sharing of fault among joint tortfeasors. *Tech–Bilt, Inc. v. Woodward–Clyde & Associates*, 38 Cal.3d 488 (1985). By limiting contribution suits from one voluntarily-settled party against a party who chose not to settle, it prevents the non-settling party from being liable for someone else's voluntarily-negotiated share of fault. *See Cont'l Ins. Co. v. Bayless & Roberts, Inc.*, 608 P.2d 281, 283 (Alaska 1980) (discussing the important difference between a judicial determination of combined fault and a voluntarily negotiated settlement of one party's fault). To allow a settling tortfeasor to seek payment from a non-settling tortfeasor for the settling tortfeasor's negotiated share of

11

liability would result in it being unjustly compensated for its sole (and voluntarily agreed-to) obligation. *See Miller v. Jarrell*, 684 P.2d 954, 956 (Colo. App. 1984). It could also result in the non-settling tortfeasor being unjustly responsible to *both* the settling tortfeasor for its obligation to the injured party *and* its own payment obligation to the injured party, since its liability has not been extinguished and the injured party is thereby still permitted to seek damages against it.[5] Section 13-50.5-102(4) forbids such inequity.

Placing this statute into the context of this case, the Court finds that Gulfeagle's contribution claim cannot proceed. As this Court has already concluded, the settlement in this case extinguished only Gulfeagle's liability for the losses; it said nothing regarding Planet Roofing's liability. Gulfeagle cannot therefore seek contribution from Planet Roofing for Gulfeagle's voluntarily-negotiated share of the losses.

The Court therefore grants Planet Roofing's request to dismiss PLM's contribution claim.

### IV. CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

1. The Court GRANTS IN PART AND DENIES IN PART Planet Roofing's Motion to Dismiss PLM's Complaint. (Doc. # 11.) The Court GRANTS the motion with respect to PLM's contribution claim and DENIES the motion with respect to PLM's breach of contractual indemnity claim.

---

[5] On the other hand, if a settling tortfeasor settles all liability with the injured party, including the liability of the non-settling tortfeasor, thereby releasing the non-settling tortfeasor from all future suits, the statute rightly allows the settling tortfeasor to seek contribution from the non-settling tortfeasor for any amounts paid in excess of the settling tortfeasor's degree of fault. To prevent contribution in this scenario would result in the non-settling party being unjustly enriched through the settling party's complete payment of a joint obligation. *See Miller v. Jarrell*, 684 P.2d 954, 956 (Colo. App. 1984).

2. The Court DENIES Planet Roofing's Motion to Dismiss Seneca's Complaint. (Civil Action No. 18-cv-00564; Doc. # 16.)

DATED: September 27, 2018

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge